IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TED DAHL, § | | |
| TDCJ #1413934, § | | |
| § | | |
| Petitioner, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. H-07-3219 |
| § | | |
| NATHANIEL QUARTERMAN, Director, § | | |
| Texas Department of Criminal Justice - § | | |
| Correctional Institutions Division, § | | |
| § | | |
| Respondent. § | | |

**MEMORANDUM AND ORDER**

The petitioner, Ted Dahl, is an inmate incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ"). Dahl has filed a petition for a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge a state court conviction. Dahl has filed an amended version of his petition and a supplement to his claims. (Docs. # 7, # 10). The respondent has answered with a motion for summary judgment, arguing that Dahl is not entitled to relief. (Doc. # 15). Dahl has filed more than one reply. (Docs. # 16, # 17, # 19). After considering all of the pleadings, the records, and the applicable law, the Court grants the respondent's motion and dismisses this case for reasons that follow.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

The conviction at issue in this case stems from a bitterly contested dispute between family members over a home that was part of an estate. That home belonged to Dahl's

mother, Rosalie Dahl. As trustee of his mother's estate, Dahl sold the home to the State of Texas Department of Transportation, which planned to use the property in connection with a highway expansion project. The property at issue, however, had been the subject of protracted litigation between Dahl and his siblings over the home's true ownership. In 1988, Rosalie Dahl executed a deed conveying the property to two of her daughters and a son-in-law (Arleen Dahl Dillon, Karen Moszkowicz, and Dominik E. Moszkowicz). In 2001, Ted Dahl obtained a judgment on behalf of the Trust, voiding the 1988 deed because the legal description of the property was defective. On July 14, 2003, Dahl sold the property to the State of Texas.

Before the sale occurred, Dahl's sisters and his brother-in-law prevailed on their appeal of the 2001 judgment. On March 27, 2003, an intermediate appellate court vacated the 2001 judgment and ordered the trial court to reform the deed retroactive to July 22, 1988. *See Dillon v. Rosalie Dahl Estate Trust*, No. 14-01-01240-CV, 2003 WL 1565959, at \*5 (Tex. App. — Houston [14th Dist.] March 27, 2003, pet. denied) (unpublished). As a result of the appellate court's decision (the "*Dillon* decision"), Dahl's siblings had a remainder interest in the property as the result of the 1988 deed and Rosalie was left with a life estate.[1]

---

[1] Rosalie Dahl had a life estate in the property. In Texas, a life estate is created by a deed or will where the language of the instrument manifests an intention on the part of the grantor or testator to pass to a grantee or devisee a right to possess, use, or enjoy property during the period of her life. *See Eversole v. Williams*, 943 S.W.2d 141, 143 (Tex. App. — Houston [1st Dist.] 1997) (citing *Trimble v. Farmer*, 157 Tex. 533, 305 S.W.2d 157, 160 (1957); *Smith v. Smith*, 305 S.W.2d 198, 200 (Tex. Civ. App. — El Paso 1957, writ ref'd n.r.e.)). Rosalie's daughters and her son-in-law had a remainder interest in the property. While a life tenant may have power to dispose of property during her lifetime, the power to dispose of property in a life estate "does not necessarily divest the remaindermen of all title or right to
(continued...)

Dahl knew about the *Dillon* decision but did not disclose it to the State of Texas or to the title company before selling the property. Without notice of the appellate court's decision in *Dillon*, the State's title insurer, Commonwealth Land Title Company of Houston, Inc., wrote Dahl a check for $510,707.35 at the closing on July 14, 2003. In doing so, the escrow officer relied on Dahl's assertions that the litigation with his siblings had been "settled" and that he knew of no adverse claims to the property. When this turned out to be untrue, Dahl was accused of selling the home without a clear title with the intent to deprive the purchaser of sale proceeds. By this time, the sale proceeds had disappeared from the Trust bank account.

A Texas grand jury returned an indictment against Dahl in cause number 1002197, which accused him of aggregate theft or theft of an "aggregate amount and value" of $200,000 or more from Susan Simmons, who was the escrow officer for Commonwealth Land Title Company and the person who wrote the check for $510,707.35 based on Dahl's representation that he had a clear title to the home without any adverse claims to the property. The indictment alleged that Dahl committed theft by deception under the following alternative theories:

> [1] by selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, and/or [2] by creating or confirming by words or conduct a false impression of law or fact that was likely to affect the judgment of the Complainant in the transaction which the Defendant did not

---

[1](...continued)
the proceeds derived from the sale of the property." *Singleton v. Donalson*, 117 S.W.3d 516, 518-19 (Tex. App. — Beaumont 2003, pet. denied). In other words, "[t]he *proceeds* of such a sale remain subject to the remainder interest." *Miller v. Wilson*, 888 S.W.2d 158, 161 (Tex. App. — El Paso 1994, writ denied) (citing *Edds v. Mitchell*, 184 S.W.2d 823, 825-26 (Tex. 1945) (emphasis in original)).

>believe to be true, and/or [3] by failing to correct a false impression of law or fact that was likely to affect the judgment of the Complainant in the transaction which the Defendant did not believe to be true.

*Clerk's Record*, No. 1002197, at 2. The State enhanced the indictment for purposes of punishment with allegations that Dahl had at least two prior felony convictions for theft and burglary.

At trial, Simmons testified that Dahl never told her that any of the other parties mentioned in prior deeds or documents retained an interest in the property and failed to mention that the Trust, or Rosalie, as beneficiary, held only a life estate. Simmons further testified, and Dahl admitted, that he never disclosed to her or others involved in the transaction that the 2001 judgment had been appealed or reversed on appeal. Simmons testified that she would not have closed the sale or written a check to Dahl had she known about the *Dillon* decision. After hearing all of the evidence, a jury in the 337th District Court of Harris County, Texas, found Dahl guilty as charged of aggregate theft. The same jury sentenced Dahl to serve fifty years in prison.

On direct appeal, Dahl argued that the evidence was legally and factually insufficient to support his theft conviction because the State failed to prove the following: (1) that Susan Simmons owned the sale proceeds; (2) that Dahl had the requisite intent to deprive Simmons of the sale proceeds; and (3) that Dahl acquired or exercised control over the proceeds without Simmons's effective consent. The intermediate court of appeals rejected all of Dahl's arguments. *See Dahl v. State*, No. 14-05-00535-CR, 2006 WL 2947877 (Tex. App. — Houston [14th Dist.] Oct. 17, 2006) (unpublished). After the court of appeals affirmed

Dahl's conviction, the Texas Court of Criminal Appeals refused his petition for discretionary review.

Dahl now seeks a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge his state court conviction. According to the amended version of the petition, as supplemented, Dahl contends that the state appellate court's decision to affirm the conviction was unreasonable because the evidence is legally and factually insufficient to support his theft conviction in two respects.[2] First, Dahl claims that the State failed to prove that he sold property that he did not own because, at the time of the sale, he "held legal title to the subject property and had a statutory right to enforce the judgment and sell the property" pursuant to a 2001 judgment that had not been overturned by a final decision. (Doc. # 7, at ¶ 12(A); Doc. # 10, ¶ 9). Second, Dahl claims that the State failed to show that Susan Simmons "had a greater right" to the sale proceeds and that she was therefore "the owner of said proceeds." (Doc. # 7, at ¶ 12(B); Doc. # 10, ¶ 8). The respondent has filed a motion for summary judgment, arguing that Dahl is not entitled to relief on any of his claims under the governing federal habeas corpus standard of review set forth below.

## II.   STANDARD OF REVIEW

---

[2]   The original petition filed by Dahl raises other claims regarding the sufficiency of the evidence, as well as claims under the Due Process and Equal Protection Clauses, that were not presented on direct appeal. Conceding that he did not present all of his claims in state court as required by the federal habeas corpus statutes, Dahl amended his petition to withdraw some of the unexhausted claims. (Docs. # 7, # 10). Although the amended petition contains a certificate of service, it appears that the respondent never received a copy of Dahl's amended petition or the supplement. To the extent that the respondent's motion for summary judgment addresses the unexhausted claims withdrawn by Dahl, the Court does not reach these claims.

Federal review of the pending habeas corpus petition is subject to the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies to those habeas corpus petitions filed after its effective date of April 24, 1996).  Embodying the principles of federalism, comity, and finality of judgments, the AEDPA "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d), set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).

The federal habeas corpus statutes require applicants for relief to first present their claims in state court and to exhaust all state court remedies through proper adjudication.  *See* 28 U.S.C. § 2254(b).  To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies.  If a claim has not been adjudicated on the merits in state court, federal review is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995).  The procedural default rule also prevents habeas review when a petitioner has failed to meet state procedural requirements for presenting his federal claims, thereby depriving the state courts of an opportunity to address those claims in the first

6

instance. *See Coleman*, 501 U.S. at 730; *Rosales v. Dretke*, 444 F.3d 703, 707 (5th Cir. 2006) (noting that the procedural default rule prevents habeas petitions from avoiding the exhaustion requirement by defaulting their federal claims in state court).

For claims adjudicated on the merits, the AEDPA provides that a petitioner is not entitled to relief unless the state court's ultimate decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (observing that the AEDPA standard is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning") (citation omitted). The burden is on the petitioner to show that he is entitled to relief under the highly deferential AEDPA framework. *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002).

Claims presenting pure questions of law and mixed questions of law and fact are governed by § 2254(d)(1). *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). The Supreme Court has clarified that "clearly established Federal law" or precedent for purposes of § 2254(d)(1) "refers to the holdings, as opposed to the dicta," of decisions from the United States Supreme Court "as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 653 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A state court decision is "contrary to" clearly established precedent if the state court arrives at a conclusion opposite to one reached by the Supreme Court on a question of law

7

or if the state court decides a case differently from the Supreme Court "on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. A state court decision is an "unreasonable application" of clearly established precedent if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Id.*

Pure questions of fact are governed by § 2254(d)(2). *See Martin*, 246 F.3d at 475. In addition, a state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)). This deference extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)). The petitioner's claims for relief are examined below under the applicable legal standard.

## III.   DISCUSSION

Dahl argues that the evidence is both factually and legally insufficient to support his conviction because the State failed to prove that the complainant, Sue Simmons, owned the sales proceeds. Dahl reasons, therefore, that the State failed to prove that he wrongfully deprived her of those proceeds. Dahl argues separately that the evidence was factually and legally insufficient to show that he did not have valid ownership of the property at issue or

that failed to disclose an adverse interest in the property. These arguments are addressed below, beginning with Dahl's claim that the evidence was factually insufficient.

### A. Factual Sufficiency

Arguing that his conviction is based on an "unreasonable determination of the facts," Dahl contends that the evidence is insufficient to support the jury's verdict. The respondent correctly notes that challenges to the factual sufficiency of the evidence are not cognizable on federal habeas corpus review of a state court conviction.

A federal habeas corpus court reviewing a petition under 28 U.S.C. § 2254 asks only whether a constitutional violation infected the petitioner's state trial. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). The Texas factual-sufficiency standard of review is based on state law. *See Clewis v. State*, 922 S.W.2d 126, 131-34 (Tex. Crim. App. 1996). A federal habeas court does not sit as a super state supreme court for review of issues decided by state courts on state law grounds. *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986). On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002); *see also West v. Johnson*, 92 F.3d 1385, 1394 (5th Cir. 1996) (explaining that, "in challenges to state convictions under 28 U.S.C. § 2254, only *Jackson* [*v. Virginia*] need be satisfied, even if state law would impose a more demanding standard of proof") (quotation and citations omitted). Because Dahl's challenge to the factual sufficiency of the evidence

does not implicate a constitutional issue, federal habeas corpus review is unavailable and these claims must be dismissed.

### B.      Legal Sufficiency - Ownership of the Sale Proceeds

Dahl complains that the evidence was legally insufficient to support his conviction because the State failed to prove that Sue Simmons owned the sale proceeds and that he therefore wrongfully deprived her of those proceeds. Noting that a similar argument was raised and rejected on Dahl's direct appeal, the respondent argues that this claim does not merit a federal writ of habeas corpus.

As noted above, a federal habeas corpus court reviews the evidentiary sufficiency of a state court conviction under the legal standard found in *Jackson v. Virginia*, 443 U.S. 307 (1979). This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. In conducting that review, a federal habeas corpus court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the verdict. *See Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995). "Where a state appellate court has conducted a thoughtful review of the evidence, moreover, its determination is entitled to great deference." *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993) (citation omitted).

Dahl was convicted of felony theft of property by depriving Susan Simmons of sale proceeds in the amount of $510,707.35 in violation of § 31.03 of the Texas Penal Code. Dahl

contends that the evidence was legally insufficient to support his conviction for theft because the State did not prove that Sue Simmons owned the sale proceeds that he was accused of misappropriating. The appellate court rejected Dahl's claim that the evidence was legally insufficient to support the conviction for this reason, noting that Simmons, as an escrow agent, qualified as a "special owner" of the proceeds as a matter of Texas law and finding that she had a greater right to possess the proceeds at issue:

> A person commits theft by unlawfully appropriating property with the intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2005). Appropriation is unlawful if performed without the owner's effective consent. *Id*. § 31.03(b)(1). Consent is ineffective if induced by deception. *Id*. § 31.01(3)(A) (Vernon Supp. 2005).
>
> A.  Ownership
>
> [Dahl] first challenges the legal and factual sufficiency of the evidence to show that Simmons, the complainant named in the indictment, was the "owner" of sale proceeds from the purchase of the home.[3] The Texas Penal Code defines an "owner" as someone who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." TEX. PENAL CODE ANN. § 1.07(a)(35) (Vernon Supp. 2005). "Possession" means actual care, custody, control, or management. *Id*. § 1.07(a)(39). Thus, any person who has a greater right to the actual care, custody, control, or management of the property than the defendant can be classified as the "owner." *Alexander v. State*, 753 S.W.2d 390, 392 (Tex. Crim. App. 1988). The prosecution may demonstrate proof of ownership by circumstantial evidence. *Jordan v. State*, 707 S.W.2d 641, 644-45 (Tex. Crim. App. 1986).

---

[3]  Simmons is a "special owner" of the sale proceeds. "A 'special owner' is an individual who is in custody or control of property belonging to another person." *Harrell v. State*, 852 S.W.2d 521, 523 (Tex. Crim. App. 1993). When a corporation is the owner of the property that has been stolen, it is the preferable pleading practice to allege special ownership in a natural person acting for the corporation. *Simpson v. State*, 648 S.W.2d 1, 2 (Tex. Crim. App. 1983). [Dahl] appears to concede this point, as he names Simmons and Commonwealth interchangeably throughout his brief in complaining that neither owned the sale proceeds.

At trial, Simmons described Commonwealth's procedure for handling sale proceeds in transactions where the State of Texas purchases property as follows:

> A: The State has the checks payable to both the property owner and Commonwealth Title. The property owner endorses it over to me and I put it in my bank account. And then I disburse the funds, having to pay off anything that has to come out of those-those proceeds. If there are delinquent taxes or liens or anything like that on the property that has to come out of the sales price.
>
> Q: So it goes into Commonwealth's bank account; is that right?
>
> A: Correct.
>
> Q: Becomes Commonwealth's property?
>
> A: It's the escrow account's, yeah . . .
>
> Q: And you disburse the money you said yourself from — from that account?
>
> A: Correct.

Pursuant to Commonwealth's procedure, [Dahl] endorsed the check from the State — payable to himself and Commonwealth — over to Commonwealth so Simmons could complete the transaction. At that point, Simmons had custody over the sale proceeds and controlled the funds in that she had the authority as escrow officer and closer to deduct Commonwealth's expenses and fees. Only then, and through Commonwealth's bank account, did Simmons disburse the remaining funds to [Dahl]. That Simmons had discretion to subtract amounts for delinquent taxes, liens, and the like further evidences her right of control over the funds. Indeed, [Dahl] could not obtain the funds from Simmons until she performed this screening function. As such, substantial evidence exists that Simmons had a greater right to the actual care, custody, control, and management of the sale proceeds than [Dahl] and thus became the owner of the proceeds. *See Chowdhury v. State*, 888 S.W.2d 186, 187 (Tex. App. — Houston [1st Dist.] 1994, pet. ref'd) (holding that district

sales manager of convenience store chain having supervisory authority over area stores and money transactions therein had greater right to possession of money in the store than defendant store manager); *see also Smith v. State*, No. 14-95-01354-CR, 1998 WL 724601, at *4-5 (Tex. App. — Houston [14th Dist.] Oct. 8, 1998, pet. ref'd) (not designated for publication) (holding that insurance claims representative having authority to settle claims and issue checks had greater right to possession of claim check than defendant requesting claim check); *cf. Grant v. State*, No. 14-01-00475-CR, 2002 WL 835016, at *4 (Tex. App. — Houston [14th Dist.] May 2, 2002, pet. ref'd) (not designated for publication) (affirming theft conviction where title insurance companies were considered owners of proceeds from the sale of property).[4]

Viewing the evidence in a light most favorable to the verdict, we conclude a reasonable trier of fact could have found beyond a reasonable doubt that Simmons had a greater right to possession of the sale proceeds and, therefore, was the owner of the proceeds. Viewing the same evidence in a neutral light, we conclude the jury was also rationally justified in finding Simmons was the owner of the sale proceeds. We overrule [Dahl's] first issue.

*Dahl v. State*, No. 14-05-00535-CR, 2006 WL 2947877, *3–*4 (Tex. App. — Houston [14th Dist.] Oct. 17, 2006, pet. ref'd) (unpublished) (footnotes [renumbered] in original).

---

[4] [Dahl] cites *Freeman v. State*, in which the Court of Criminal Appeals held that where two parties have competing equal possessory interests in the property at the time of the actual commission of the offense, the State must prove beyond a reasonable doubt that the complainant in fact had a greater right to possession than the defendant. 707 S.W.2d 597, 604 (Tex. Crim. App. 1986). [Dahl's] reliance on *Freeman* is misplaced. The critical fact in *Freeman* was that both the defendant cashier and the complainant security guard had competing equal possessory interests in the property at the time of the offense because they were both employees of the same store and neither position had any discernable superiority as to possession of store merchandise. *See generally Long v. State*, 7 S.W.3d 316, 321 (Tex. App. — Beaumont 1999, no pet.) (noting the unique nature of the employee relationship in Freeman and opining that such narrows *Freeman*'s application regarding "owner[ship]" in theft cases). Here, as explained above, [Dahl] and Simmons did not have competing equal possessory interests at the time of the offense, which was when [Dahl] obtained the funds from Simmons. Simmons, in accordance with Commonwealth's procedure, had custody of the money and controlled it to the extent she had discretion to deduct fees and other amounts to account for encumbrances. Such authority gave Simmons a greater right to possession of the proceeds at the time she wrote the check to appellant.

As set forth above, the evidence is sufficient under the *Jackson* standard, if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The evidence in this case establishes that Simmons, as an escrow agent for Commonwealth Land Title Company of Houston, had a greater right to the sale proceeds and that she owned those proceeds when she wrote the check for $510,707.35 in exchange for Dahl's representation that he had clear title to the home. Dahl does not show otherwise. Accordingly, Dahl has failed to demonstrate that the evidence was legally insufficient to support this particular element (*i.e.*, that Sue Simmons owned the proceeds) or that the state court's decision was contrary to or unreasonable under *Jackson v. Virginia*. Accordingly, Dahl is not entitled to federal habeas corpus relief on this issue.

### C.     Legal Sufficiency - Ownership of the Property

Dahl also complains that the evidence was legally insufficient to support the conviction because the State failed to establish that he did not own the property, or have clear title to sell it, when the closing occurred. Pointing to the trial court judgment that was entered in his favor in 2001, Dahl maintains that the 1988 deed, which granted remainder interests in the property to his siblings, was void on its face because the deed lacked a proper legal description of the property. Dahl insists that the 2001 judgment voided the 1988 deed and his siblings' interests in that property. Dahl acknowledges that the 2001 judgment was vacated on direct appeal in March 2003, before the sale occurred. *See Dillon v. Rosalie Dahl Estate Trust*, No. 14-01-01240-CV, 2003 WL 1565959 (Tex. App. — Houston [14th Dist.]

March 27, 2003, pet. denied) (unpublished). Dahl reasons, however, that the 2001 judgment remained in effect when he sold the property in June of 2003 because his siblings did not post a supersedeas bond to suspend enforcement of the 2001 judgment during the appeal and, even though the appellate court issued a decision in his siblings' favor, the appellate court's mandate did not issue until 2004, which was well after the sale occurred.[5] Thus, he contends that he had no intent to deceive Simmons regarding whether he had ownership rights to sell the property without any adverse interests.

The respondent argues that Dahl's claim is without merit, and that the evidence was legally sufficient to support the conviction, for reasons articulated by the court of appeals. In that decision, the appellate court rejected Dahl's contention that he was not required to divulge the appeal that had been filed to challenge the 2001 judgment:

> In his third and final issue, appellant challenges the legal and factual sufficiency of the evidence to show he appropriated the sale proceeds without Simmons's effective consent. Consent by the owner becomes ineffective where induced by deception. TEX. PENAL CODE ANN. § 31.01(3)(A). The Penal Code defines "deception" to include:
>
> (A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that actor does not believe to be true;
>
> (B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in

---

[5] The respondent argues that this precise claim was not presented properly in state court and that it is therefore procedurally barred. As discussed below, a review of the appellate court's decision shows that Dahl's claim was presented, but that the court of appeals declined to address it, electing to affirm the conviction on an alternative theory. Because the evidence was sufficient to support the conviction for the reasons outlined by the court of appeals, this Court need not address Dahl's alternative claims.

>   the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true; [or] . . .
>
> (D)  selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record.

*Id.* § 31.01(1)(A)-(B), (D).

[Dahl] contends he did not fail to disclose an adverse claim to the property under section 31.01(1)(D) because he disclosed to Simmons "the existence of the dispute over the ownership of the property" by informing her of the 2001 final judgment voiding the grantees' remainder interests. The State counters that [Dahl] failed to disclose an adverse claim by admittedly neglecting to disclose both that the grantees had appealed the 2001 final judgment and that we reversed the judgment nearly four months before the closing date. *See Dillon*, 2003 WL 1565959, at *5. The Court of Criminal Appeals upheld a finding of theft by deception under similar circumstances in *Russell v. State*, 551 S.W.2d 710, 713-14 (Tex. Crim. App. 1977). There, the defendant contracted to sell property without having clear title and obtained a down payment from the prospective purchaser without disclosing the existence of any adverse claims or liens. *Id.* The court held the defendant committed theft by deception by failing to disclose liens and security interests in the property he attempted to sell. *Id.* at 713-14. In so holding, the court noted the affirmative duty to disclose legal impediments to the enjoyment of property before transfer operates regardless of whether such impediments are valid or a matter of public record. *Id.* at 714.

Like the defendant in *Russell*, [Dahl] knew of a legal impediment to enjoyment of the property he attempted to sell, as he was aware of his grantees' appeal and of the *Dillon* decision. Moreover, he knew of his duty to disclose such an adverse claim, as did the defendant in *Russell*, because he signed an affidavit at closing declaring he had no knowledge of adverse claims to the property. Further, although [Dahl] did disclose to Simmons the existence of the 2001 judgment, his repeated, unequivocal assurances that such dispute was "over" were clearly false. Accordingly, the evidence was legally and factually sufficient to support a finding that he induced consent by deception.

> [Dahl] further claims he believed he had the authority to sell the property "pending final resolution of the appeal" because his mother had at least a life estate in the property, the grantees posted no supersedeas bond to suspend enforcement of the 2001 judgment, and we had not yet issued a mandate for Dillon by the closing date. Therefore, [Dahl] reasons, the evidence is legally and factually insufficient to show that he did not believe to be true the fact he had authority to sell the property under sections 31.01(1)(A) and (B). Where disjunctive theories are submitted to the jury, and the jury renders a general verdict of guilty, such verdict should be affirmed as long as there is sufficient evidence to support one of the theories presented. *Guevara v. State*, 191 S.W.3d 203, 207-08 (Tex. App. — San Antonio 2005, pet. ref'd). Accordingly, given our finding above that legally and factually sufficient exists to support a finding of theft by deception under section 31.01(1)(D), we need not address his sufficiency challenges to alternative theories of deception.
>
> Viewing the evidence in a light most favorable to the verdict, we conclude a reasonable trier of fact could have found beyond a reasonable doubt that appellant unlawfully appropriated the property without Simmons's effective consent because of his failure to disclose an adverse claim. Viewing the same evidence in a neutral light, we conclude the jury was also rationally justified in finding appellant unlawfully appropriated the property without effective consent. We overrule [Dahl's] final issue.

*Dahl v. State*, No. 14-05-00535-CR, 2006 WL 2947877, at *6–7. Thus, the state court found that the evidence was sufficient to support Dahl's conviction under § 31.03(1)(D) of the Texas Penal Code and concluded that it did not need to reach his alternative arguments.

Dahl fails to distinguish the *Russell* case on which the appellate court relied or to show that the appellate court incorrectly viewed that decision as controlling. In that respect, he fails to show that he was not required to disclose the appeal from the 2001 judgment or the March 2003 appellate decision in favor of his siblings (the *Dillon* decision) at or before the July 2003 closing. Based on its own review of the record, this Court concludes that a rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. Thus, Dahl fails to show that his conviction was supported by

17

insufficient evidence in violation of the *Jackson v. Virginia* standard or that the state court's decision was otherwise incorrect.

Because Dahl fails to show that his conviction was supported by legally insufficient evidence in violation of the *Jackson v. Virginia* standard, he does not demonstrate that the state court's decision to reject this claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). Dahl further fails to show that the state court's decision was based on an "unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). Accordingly, Dahl has failed to show that he is entitled to a federal writ of habeas corpus under the applicable standard of review. The respondent's motion for summary judgment is granted and Dahl's federal habeas petition is denied.

## IV.    CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For all of the reasons discussed above, the court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner stated a valid claim of the denial of a constitutional right. Therefore, a certificate of appealability will not issue.

**V.    CONCLUSION AND ORDER**

Based on the foregoing, the court **ORDERS** as follows:

1. The respondent's motion for summary judgment (Doc. # 15) is **GRANTED**.

2. The petition for a writ of habeas corpus, as amended and supplemented by the petitioner (Docs. # 1, # 7, # 10), is **DENIED**, and this case is **DISMISSED** with prejudice.

3. A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on  May 22,  2008.

_____
Nancy F. Atlas
United States District Judge